## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JOSEAN CLEMENTE,**

    Petitioner,

    v.                                 Civil No. 16-1960 (PAD/BJM)

**UNITED STATES OF AMERICA,**

    Respondent.

### REPORT AND RECOMMENDATION

On June 10, 2013, Josean Clemente ("Clemente") pleaded guilty to murder and the use of a firearm during a crime of violence. Cr. No. 11-499 (PAD) ("Case 1"), Docket No. 186 ("Plea Agreement"). He was sentenced to 322 months of incarceration. Case 1, Docket No. 232 at 2. On May 24, 2016 he filed a pro se motion to correct, set aside, or vacate, his sentence under 28 U.S.C. § 2255. Docket No. 1-1 ("Pet. Memo."). He also requested an evidentiary hearing. Pet. Memo at 12. The government opposed. Docket No. 5. This matter was referred to me for a report and recommendation. Docket No. 7.

For the reasons that follow, I recommend Clemente's petition be **DENIED.**

### BACKGROUND

On October 19, 2011, Frankie Rondon Rosario ("Rondon") was shot to death while on guard duty at the Sabana Seca Navy Base in Toa Baja, Puerto Rico. Plea Agreement at 10. On June 15, 2012, a federal grand jury returned a superseding indictment charging Clemente with the murder in violation of 18 U.S.C. §§ 1111, 7(3), 2 (Count One) as well as the carry and use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(a), 924(j)(1), 2 (Count Two); and robbery in violation of 18 U.S.C. § 1951(b)(3) (Count Three). Case 1, Docket No. 49 at 1–6. Clemente was arrested

on June 20, 2012. Case 1, Docket No. 79. The court appointed Thomas R. Lincoln ("Lincoln") as defense counsel. Case 1, Docket No. 58. Since the charges brought against Clemente were death-penalty eligible, he was assigned John R. Martin as second counsel. Case 1, Docket No. 64. Second counsel was dismissed on April 12, 2013 after the government notified that it would not be seeking the death penalty. Case 1, Docket No. 153.

On June 10, 2013, Clemente entered a guilty plea on Counts One and Two. Plea Agreement at 1. The parties recommended a sentence of 210 months for Count One and a consecutive term of 66 months imprisonment for Count Two, culminating in a total sentence of 276 months (23 years). Plea Agreement at 4.

On August 28, 2013, Clemente filed a pro se motion for change of counsel, alleging that there had been "a total breakdown of communication" between him and Lincoln. Case 1, Docket No. 201 ("Mot. for Change of Counsel"). Clemente also claimed that Lincoln had deliberately misled him into believing "that it would be impossible to prove his defense . . . and that his only solution [was] to plead guilty to avoid [a] Life Sentence. . ." *Id.* Finally, Clemente alleged that Lincoln never supplied him with evidence provided by the government during discovery "and forced him to enter a guilty plea so he does not have to do his work." *Id.* The motion was denied on September 6, 2013, and the court ordered Lincoln to "visit the client and assure him accordingly." Case 1, Docket 203.

On September 27, 2013, Clemente filed a pro se informative motion. Case 1, Docket No. 219 ("Informative Mot."). He re-alleged that Lincoln never provided him with the evidence that the government had against him, submitting that a key government witness had provided one version of events that did not implicate Clemente in the crime and later changed his story to include Clemente. *Id.* Clemente also reiterated the claim that he had been tricked into entering the guilty plea, alleging that Lincoln told him that the plea deal would help him avoid a life sentence, and was "the only way to help his wife . . . ." *Id.* Finally, Clemente insisted that the court erred in denying his Motion for Change of

Counsel, citing as evidence the fact that Lincoln had not complied with the court order to visit him. *Id.* In response to the motion, the court ordered Lincoln to "visit this difficult defendant who is being advised by another inmate." Case 1, Docket No. 221.

Clemente's sentencing hearing was held on October 25, 2013. Case 1, Docket No. 231. That same day, the court sentenced him to 262 months for Count One and 60 months for Count Two, amounting to a total imprisonment term of 322 months—46 months longer than that provided by the plea agreement. Case 1, Docket No. 232 at 2. Count Three of the indictment was dismissed. *Id.* at 1. The First Circuit affirmed the judgment on appeal, Case 1, Docket No. 264, and the Supreme Court denied certiorari. *Clemente v. United States*, 136 S.Ct. 839 (2016). On May 24, 2016, Clemente filed this motion to vacate the sentence pursuant to 28 U.S.C. § 2255. Pet. Memo. at 4.

## DISCUSSION

Section 2255(a) provides that "[a] prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Upon a prisoner's motion, the court will grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.* § 2255(b). Under this standard, a hearing is not necessary for motions that "state grounds for relief not cognizable at all under § 2255, as well as motions which contain only 'bald' assertions of cognizable claims without adequate supporting factual allegations." *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974).

In this case, Clemente challenges his sentence on two separate but related grounds. First, he raises multiple claims of ineffective assistance of counsel in violation of the Sixth Amendment. Second, he argues that he was coerced into accepting the plea agreement, thereby rendering his guilty plea invalid. I will address each argument in turn.

## I.        Ineffective Assistance of Counsel

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotations omitted). When a defendant challenges the validity of a plea due to ineffective assistance of counsel, the challenge is evaluated under the two-part test provided by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill*, 474 U.S. 58. First, the defendant must "demonstrate that counsel's performance fell below an objective standard of reasonableness. This means that the defendant must show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases." *Knight v. United States*, 37 F.3d 769, 774 (1st Cir. 1994) (internal quotations omitted). When reviewing an attorney's actions, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Second, the petitioner must "show that the deficient performance prejudiced the defense." *Id.* at 687. When the challenge concerns a guilty plea, this means that the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In other words, "[d]efendants must show that their decisions to plead guilty were actually and materially influenced by their counsels' errors." *Panzardi-Alvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989) (internal quotations omitted).

### Failure to Provide Discovery

Clemente's most developed claim for ineffective assistance of counsel arises out of Lincoln's failure to disclose "discovery material" involving K.T.S., a minor also charged in the murder of Rondon. In the government's version of events, Clemente and three other

individuals entered the Sabana Seca Navy Base with the intention of robbing Rondon. Plea Agreement at 10. During the attempted robbery, both Clemente and K.T.S. shot and killed Rondon while the other two individuals looked on. *Id*. Upon arrest, K.T.S. told investigators that he alone was responsible for shooting and killing Rondon. Case 1, Docket No. 99 at 2. However, at some point K.T.S. changed his version of the events to implicate Clemente in the shooting as well. Case 1, Docket No. 261 ("Sentencing H'rg Tr.") at 3:20–4:5, and was apparently prepared to testify at Clemente's trial. Pet. Memo. at 5. Clemente claims that he never knew about K.T.S.'s initial statement to investigators, and says that Lincoln's failure to "relay such potential exculpatory information" constituted ineffective assistance.

        In this instance, the court need not decide if petitioner's claim lives up to the first prong of the *Strickland* test because Clemente has failed to meet the test's second prong. Under *Strickland*, an attorney's performance must not only be deficient, it must also be prejudicial to the defendant. *Strickland*, 466 U.S. at 687. In the petitioner's case, this means he must show to a "reasonable probability" that but for Lincoln's failure to disclose the information about K.T.S., petitioner would have insisted on going to trial. Clemente has not met his burden.

        First and foremost, the record does not indicate that Clemente attempted to withdraw his guilty plea after learning about K.T.S.'s conflicting statements. Although Clemente filed two pro se motions, including one that specifically mentions K.T.S.'s statements, neither included a request to withdraw the guilty plea.[1] Clemente argues that he would have instructed Lincoln to withdraw the plea, but was never able to do so because Lincoln failed to visit him before the sentencing hearing. Pet. Memo. at 10. While this may or may not be the case, Lincoln did offer to file a motion withdrawing the plea at the

---

[1] Although petitioner now claims that his Motion for Change of Counsel includes an "implied Motion for leave to Withdraw Guilty Plea," Pet. Memo at 8, the judge presiding over his criminal case did not find such a motion in the document.

sentencing hearing: "[MR. LINCOLN:] And I want the Court to explain to the Defendant whether he, in fact, wishes to withdraw his plea. In that case, I will file a motion, because it's sort of between the lines." Sentencing Hr'g Tr. at 4:19–22. [2] The petitioner, however, did not take him up on the offer. Rather he affirmed before the court that Mr. Lincoln had done nothing wrong:

> THE COURT: So what is the complaint about Mr. Lincoln? What did he do wrong?
> THE DEFENDANT: Nothing.
> THE COURT: Nothing?
> THE DEFENDANT: Uh-huh.

Sentencing Hr'g Tr. at 10:14–18. The petitioner's failure to challenge his guilty plea after learning about K.T.S.'s conflicting statements indicates that the new information was not material to his decision to forego trial. *See United States v. Arizmendi-Serrano*, 204 F. App'x. 33, 34 (1st Cir. 2006) (per curiam) (attorney's mistaken advice about possible sentence length was not material to defendant's decision to plead guilty because even after defendant learned of mistake, he "made no attempt to vacate his guilty plea. . . .").

Moreover, K.T.S.'s initial statement does not appear to have been so detrimental to the government's case that it might have changed petitioner's mind about pleading guilty. Although the statement certainly calls K.T.S.'s credibility into question, it does not shatter it. As Lincoln explained to the court, K.T.S. began cooperating with authorities and changed his statement once "[he] realized that he was no longer just facing a sentence of a maximum of up to age 21, but that . . . he was facing a life sentence, a possible life sentence. And then at that time he started cooperating with the authorities, and he started giving the versions that he gave." Sentencing Hr'g Tr. at 3:24–4:5. Furthermore, the government's

---

[2] Note that the record is unclear whether Lincoln did or did not comply with the court order to visit the petitioner. Clemente points to the quoted statement as proof that Lincoln never visited or discussed the case with him. Pet. Memo. at 10. However, Lincoln's other statements from the hearing seem to imply that he did visit the petitioner: "And I have tried to explain to the Defendant, that [the conflicting K.T.S. statements] can be confronted in a trial. If you want to confront the witness because he is lying or whatever, you can confront him at trial . . . ." Sentencing Hr'g Tr. At 4:6–9.

case does not appear to have rested entirely on K.T.S. testimony. As the plea agreement
states, the government would have presented K.T.S.'s testimony along with "the testimony
of law enforcement personnel and expert witnesses, photographs of the crime scene,
ballistic evidence, the autopsy, cell phones seized, toll records, and other documentary
evidence." Plea Agreement at 11. Clemente's brief does not address why K.T.S.'s initial
statement, out of all the evidence amassed against him, would have caused him to reject
the plea agreement.  Given Clemente's failure to withdraw his plea and the limited impact
that K.T.S.'s initial statement may have had at trial, I find that petitioner has not met his
burden of showing that counsel's error prejudiced his decision to accept the plea deal.
Therefore, Lincoln's alleged failure to disclose information about K.T.S.'s initial statement
cannot sustain a claim for ineffective assistance of counsel.

### *Other Ineffective Assistance of Counsel Claims*

Channeling his earlier pro se motions, Clemente also makes a number of
generalized claims of ineffective assistance of counsel. He alleges that there was a
breakdown in communications between himself and Lincoln and that because they were
"embroiled in conflict," he did not receive effective assistance of counsel. Pet. Mem. at 7.
He also argues that, separate from the K.T.S. material, Lincoln failed to provide him with
any "discovery material" on the case. *Id.* at 4. Finally, he claims that "counsel never
investigated any information that could have been favorable for petitioner at trial when
petitioner advised him that [he] would want to plead not guilty" Docket No. 1-2 at ¶ 7. As
explained below, Clemente's claims lack merit.

A hearing is not necessary for "motions which contain only 'bald' assertions of
cognizable claims without adequate supporting factual allegations." *Moran v. Hogan*, 494
F.2d 1220, 1222 (1st Cir. 1974). Moreover, "[w]here a petition (1) is inadequate on its face,
or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files
and records of the case, *summary dismissal* is appropriate." *Lema v. United States*, 987 F.2d
48, 51 (1st Cir. 1993) (internal quotations omitted) (emphasis in original). In this case,

petitioner's claims of ineffective assistance of counsel are unsupported by the record and
contradicted by Clemente's statements before the court and in the plea agreement.

Contrary to Clemente's claims, the record shows that he was satisfied with
Lincoln's performance before the guilty plea was entered. First, the plea agreement signed
by Clemente contains a clause stating that "[t]he defendant, represents to the Court that
defendant is satisfied with defendant's attorney, Thomas Lincoln, Esq., and hereby
indicates that counsel has rendered effective legal assistance." Plea Agreement at 5.
Second, at the change of plea hearing, Clemente admitted that he had discussed his case
with Lincoln and was satisfied with counsel's performance:

> THE COURT: Very well. Have you discussed this case with Mr. Lincoln,
> your lawyer?
> DEFENDANT CLEMENTE: Yes.
> THE COURT: Are you satisfied with the services he's rendering for you in
> this case?
> DEFENDANT CLEMENTE: Yes.

Case 1, Docket No. 245 ("Change of Plea Hr'g Tr.") at 7:6–11.

Moreover, even after filing the pro se motions, which made numerous
allegations against Lincoln's performance, Clemente re-affirmed that he was
satisfied with counsel's actions:

> THE COURT: So what is the complaint about Mr. Lincoln? What did he do
> wrong?
> THE DEFENDANT: Nothing.
> THE COURT: Nothing?
> THE DEFENDANT: Uh-huh.

Sentencing Hr'g Tr. at 10:14–18. He also admitted that both of his pro se motions were
prepared by another inmate and that he had little understanding of their contents:

> THE COURT: And you never basically read or studied what the inmate
> wrote that was filed in your name; correct?
> THE DEFENDANT: No.
> THE COURT: Just papers filed. That's it?
> THE DEFENDANT: Yes, sir.

Sentencing Hr'g Tr. at 9:4–9. And ultimately, he expressed a desire to withdraw the

motions:

> THE COURT: Do you insist on those motions?
> THE DEFENDANT: No.
> THE COURT: Do you wish to withdraw them?
> THE DEFENDANT: Yes, sir.

Sentencing Hr'g Tr. at 11:1-4. Such statements made in open court "carry a strong presumption of verity." *United States v. Martinez-Molina*, 64 F.3d 719, 733 (1st Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). And "[j]udges have a right to rely on the words and representations of defendants who plead guilty before them." *Berroa Santana v. United States*, 939 F. Supp. 2d 109, 117 (D.P.R. 2013). Given Clemente's repeated assurances to the court that Lincoln's assistance was not defective, I find that petitioner's remaining ineffective assistance of counsel claims have been "conclusively refuted as to the alleged facts by the files and records of the case," and that "*summary dismissal* is appropriate." *Lema*, 987 F.2d, 51.

## II.    Coercion

Clemente also claims that the guilty plea is invalid because Lincoln coerced him into accepting the plea agreement by "not divulging exculpatory evidence to him and only claiming that [Clemente] would be 'convicted of murder and given Life in prison.'" Pet. Mot. at 11. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A guilty plea is involuntary if it is "obtained 'by actual or threatened physical harm or by coercion overbearing the will of the defendant.'" *United States v. Martinez-Molina*, 64 F.3d 719, 732 (1st Cir. 1995) (quoting *Brady v. United States*, 397 U.S. 742, 750 (1970)). When determining if an attorney's statement was so coercive as to overcome the defendant's will, a court must consider the context in which the statement was made. *See United States v. Dunfee*, 821 F.3d 120, 131 (1st Cir. 2016) (attorney's statement that defendant's conviction was guaranteed if the case went to trial was not

coercive when defendant "faced a flurry of incriminating evidence and had little with which to fight back.").

Similar to the defendant in *Dunfee*, Clemente arguably faced an uphill climb at trial, with the government prepared to present the testimony of a cooperating witness, law enforcement testimony, ballistic evidence, cell phones evidence, and toll records among other evidence. Plea Agreement at 11. As the First Circuit noted in *Dunfee*, "there is a distinction between coercion and the offering of candid legal advice." 821 F.3d 120, 131. While the statement that Clemente may be given life in prison if his case went to trial may have been unpleasant to the petitioner, it does not rise to the level of coercion.

The voluntariness of the plea agreement is further supported by Clemente's admissions stating as much before the court. At the change of plea hearing, Clemente acknowledged that he had not been coerced into entering the plea agreement:

> THE COURT: Has anybody threatened you or forced you in any form or fashion in order to induce you to plead in this case. . . ?
> CLEMENTE: No, sir.

Change of Plea Hr'g Tr. at 16:12–17. In response to Clemente's informative motions, the judge again asked Clemente if he had been coerced into pleading guilty at the sentencing hearing:

> COURT: [At the change of plea hearing] you confirmed to me that you were totally capable of entering a plea of guilty, that there had been no pressure, that you wanted to plead because that was your decision.
> Do you remember that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Was that true?
> THE DEFENDANT: Yes, sir.

Sentencing Hr'g Tr. at 5:16–23.

Given the petitioner's statements in open court that he had not been pressured in accept the plea as well as the particular circumstances of the petitioner's case, I do not find that the petitioner has a colorable claim that the plea was undertaken involuntarily.

Clemente. v. United States, Civil No. 16-1960 (PAD/BJM)                                                    11

## CONCLUSION

For the foregoing reasons, the petition under 28. U.S.C. § 2255 should be **DENIED.**

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1) and Rule 72(d) of the Local Rules of this Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt.  Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 14th day of July, 2016.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge